IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

S.G.W., T.B., and M.B.W.,                          Case No. 6:16-cv-01612-AA
                                                   OPINION AND ORDER

Plaintiffs-Appellants,

vs.

EUGENE SCHOOL DISTRICT,

Defendant-Cross-Appellee.

_____

AIKEN, Judge:

This is an appeal from an administrative due process hearing that addressed the services

provided to plaintiff S.G.W. ("student") under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. §§ 1400 *et seq.*  The Administrative Law Judge ("ALJ") held that

defendant Eugene School District materially failed to implement student's Individual Education

Plan ("IEP"), thereby violating her right to a free appropriate public education under the IDEA.

The ALJ also identified four procedural violations of the IDEA, and concluded that two of those

violations caused educational harm to student.  Student, along with her parents, plaintiffs T.B.

and M.B.W. ("parents"), appealed the narrow question of whether the ALJ imposed an

unreasonable time limitation on the implementation of a portion of the remedy for the IDEA

violations.  Defendant cross-appealed, contending it complied with the IDEA.  For the reasons

set forth below, the ALJ's decision is reversed as to the time limitation only.

**BACKGROUND**

The parties are familiar with the factual background. Accordingly, this section contains only a brief overview of the facts underlying student's disability.[1] Student is a high school senior who was the victim of a violent assault at age thirteen. When student was hospitalized after a suicide attempt following the assault, a psychiatrist diagnosed student with autism spectrum disorder.

Student's family moved to Eugene, Oregon, in 2012. Student enrolled in the neighborhood public high school, but due to attendance and emotional difficulties was transferred to a one-on-one instructional setting. In spring 2014, defendant found student eligible for special education services based on the diagnoses of autism spectrum disorder and emotional disturbance. Student's first IEP went into effect May 14, 2014. In September 2014, student filed a Due Process Complaint with the Oregon Department of Education, alleging violations of the IDEA and seeking specially designed instruction ("SDI") to compensate for those violations. In March 2015, the ALJ found defendant had violated the IDEA during the 2012-2013 and 2013-2014 school years and directed defendant to provide student 570 hours of SDI.[2]

During 2014-2015, the school year relevant to this appeal, student attended an alternative high school ("AHS") with a small overall student population, high teacher-to-student ratios, and a high percentage of students with special education needs. Student's IEP for that year required the following: updates to parents through "regular progress reports" and SDI, provided by a

---

[1] The facts in this background section are drawn from the final order now on appeal, Tr. 21-65, and from *T.B. v. Eugene School District*, 2016 WL 1267163 (D. Or. Mar. 29, 2016), a prior IDEA appeal involving the same parties.

[2] On appeal, Judge McShane held that the 570-hour SDI award was not subject to any offset for services defendant already had provided. *T.B.*, 2016 WL 1267163, at *4.

PAGE 2 – OPINION AND ORDER

"special ed teacher/provider" in a "self contained/resource room," for sixty hours in transitions, forty-five hours in study/organizational skills, and ninety hours in behavior/social skills.[3] Districts' Ex. D9 at 7, 9.

In August 2015, student again filed a due process complaint, asserting defendant had materially failed to implement the 2014-2015 IEP and alleging various procedural violations of the IDEA. In March 2016, the ALJ convened a four-day hearing. After the parties submitted post-hearing briefs, the ALJ issued her final order. In relevant part, she concluded that:

> 1. The District materially failed to implement Student's August 29, 2014 IEP by not providing: a) SDI in transitional, organizational and study skills, and social and behavioral skills; b) counseling, a related service; and c) progress reports to Parents.
>
> . . .
>
> 7. The District failed to use appropriate transitional assessments in developing Student's IEPs for the 2015-2016 school year, and failed to provide adequate transitional services for that school year, thereby causing educational harm to Student.
>
> 8. The District failed to include in Student's IEP for the 2015-2016 school year goals agreed-upon by the IEP team, thereby causing educational harm to Student.

Tr. 46-47.

As a remedy, the ALJ ordered defendant to (1) conduct a transitional assessment of Student and formulate an amended IEP with new transition goals, with certain activities to be completed by June 27, 2016; (2) provide counseling services; (3) provide, by the date of student's high school graduation and through a licensed special education teacher, sixty hours of SDI in transitions, thirty-five hours of SDI in study/organizational skills, and eighty hours of SDI in behavior/social skills; (4) update parents through monthly written progress reports during the

---

[3] This SDI was in addition to the 570 hours of SDI required by the first ALJ order.

school year; and (5) address the efficacy of student's Behavior Support Plan and make changes to that plan as necessary. Tr. 64-65.

The record amply demonstrates that student is academically gifted. The primary barrier to student's success was emotional meltdowns triggered by conflicts with students and teachers. Student's inability to deal with those meltdowns without leaving the classroom caused a high number of absences, which in turn affected student's academic performance. During the 2014-2015 school year, student's ability to handle conflict improved and student's absences decreased. Student earned nearly straight A's, including in Japanese, geology, and math classes at the University of Oregon. Student wants to go to college and has considered becoming a lawyer, immunologist, or anthropologist.

When student began the 2014-2015 school year, student was on track to graduate in June 2016. That graduation date represented a one-year delay because of credits lost due to excessive absences in previous years. The June 2016 date was pushed back to December 2016, and later to March 2017, to enable student to graduate with the type of diploma necessary to enroll in a four-year university.

## STANDARDS

Whether a school district violated the IDEA is a mixed question of law and fact, *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1053 (9th Cir. 2012), to which this Court applies "modified *de novo* review," *Ashland Sch. Dist. v. Parents of Student R.J.*, 585 F. Supp. 2d 1208, 1211 (D. Or. 2008). That standard is an "unusual mixture of discretion and deference" that "differs substantially from judicial review of other agency actions." *Ojai United Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471-72 (9th Cir. 1993). The standard arises from the statute, which directs that the reviewing district court "shall receive the records of the administrative

PAGE 4 – OPINION AND ORDER

proceedings; shall hear additional evidence at the request of a party; and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(i)-(iii) (internal numbering omitted).

Although this standard of review gives district courts broader discretion than they usually possess in administrative appeals, review is not *de novo. Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001). Because Congress gave states the "primary responsibility of formulating each individual child's education," in IDEA appeals federal courts must give the final decision in the state administrative process "due weight." *Id.* at 888 (quoting *Bd. of Educ. of Hendrick Hudson Centr. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982)). The "due weight" requirement acknowledges the "specialized knowledge and experience" state educational agencies possess, and prevents courts from "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206. The appropriate amount of deference varies depending on the thoroughness of the findings supporting the administrative decision. *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1494 (9th Cir. 1994).

Fashioning a remedy, unlike determining whether a legal violation occurred, is an exercise of discretion. Accordingly, an ALJ's remedy in an IDEA case is reviewed for abuse of discretion. *Park ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006).

## DISCUSSION

Plaintiffs challenge only the remedy crafted by the ALJ, while defendant contends the ALJ erred in finding violations of the IDEA. Accordingly, I first address the issues raised in defendant's appeal, and then turn to plaintiff's arguments about the remedy.

"The IDEA offers federal funds to states in exchange for a commitment: to furnish a 'free appropriate public education' — more concisely known as a FAPE — to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Schs.*, — S. Ct. —, 2017 WL 685533, \*4 (Feb. 22, 2017) (quoting 20 U.S.C. § 1412(a)(1)(A)). A FAPE "comprises 'special education and related services' — both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Id.* (quoting 20 U.S.C. §§ 1401(9), (26), (29)). The IEP is the "'primary vehicle' for providing each child with the promised FAPE." *Id.* (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

There are two types of IDEA violations. Substantive violations broadly concern the denial of the statutory right to a FAPE. 20 U.S.C. § 1415(b). Failure to implement the provisions of an IEP is a substantive violation. *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 815 (9th Cir. 2007). "There is no statutory requirement of perfect adherence to the IEP," so "minor implementation failures" are insufficient to show a violation. *Id.* at 821. Rather, a plaintiff asserting an implementation failure must prove that the failure was "material."[4] *Id.* at 815. "A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." *Id.* at 822. "[T]he materiality standard does not require that the child suffer demonstrable educational harm in order to prevail. However, the child's educational progress, or lack of it, may be probative of whether there has been more than a minor shortfall in the services provided." *Id.*

---

[4] The Ninth Circuit's materiality standard is the majority rule, but some courts have suggested that all IEP implementation failures violate the IDEA. *D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.*, 465 F.3d 503, 511-13 (2d Cir. 2006); *see also Van Duyn*, 502 F.3d at 828 (Ferguson, J., dissenting) ("Judges are not in a position to determine which parts of an agreed-upon IEP are or are not material.")

Procedural violations, by contrast, are violations of particular statutory or regulatory provisions governing the provision of services to children with disabilities. *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 938 (9th Cir. 2007). For example, there are statutory provisions governing who is a part of the IEP team and guaranteeing parents the right to participate in the IEP development process. *Id.* When a plaintiff alleges a procedural violation of the IDEA, he or she must show not only a violation but either "loss of educational opportunity" or "serious infringe[ment of] the parents' opportunity to participate in the IEP formation process." *Id.* at 938 (quoting *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992)).

I.    *Substantive Violation: Implementation of Student's IEP*

As noted above, the ALJ found one substantive violation of the IDEA: a failure to provide SDI, counseling, and regular progress reports as required by student's 2014-2015 IEP. Because defendant does not challenge the ALJ's counseling finding, this opinion focuses on SDI and progress reports. Specifically, the ALJ concluded that neither Ms. Ewing, AHS's special education teacher, nor any of AHS's regular instructors provided student SDI and that parents did not receive the sort of reports contemplated by the IEP. Defendant argues that the ALJ's analysis contains significant errors, and that those errors mean the decision is entitled to little deference in this Court. Defendant also contends any violations were not material.

As a threshold matter, I must resolve the parties' disagreement about the meaning of the "materiality" standard in the Ninth Circuit. Defendant argues that student's undisputed academic progress renders any IEP implementation failure immaterial under *Van Duyn*. Plaintiff responds that a student's progress is only relevant when it is not clear whether a deviation from the requirements of the IEP was more than minor. I agree with plaintiff. Under the plain terms of

PAGE 7 – OPINION AND ORDER

*Van Duyn*, a student's progress is relevant to resolve doubts about the extent of the "shortfall" from the IEP's standards. 502 F.3d at 822. The fact that a student did well in school is not a bar to substantive IDEA claims, and in fact comes into play with respect to substantive violations only in close cases.

I now turn to defendant's allegations of error. First, defendant argues that the ALJ incorrectly allocated the burden of proof below to the district.[5] This argument relates to the section of the final order addressing whether regular education teachers at AHS were providing SDI to student in collaboration with the special education teacher, Ms. Ewing, such that the regular education teachers could be considered special education providers within the meaning of the IEP. In the course of analyzing that question, the ALJ stated that "the District offered no evidence that the other teachers were supervised by or acting at Ms. Ewing's direction when they provided SDI to Student." Tr. 52.

Read in isolation, this statement suggests that the ALJ placed the burden of proof on defendant as to this issue. But read in context, I find no error. The ALJ devoted several paragraphs to discussing the burden of proof and clearly understood that plaintiffs, as the party seeking relief, bore that burden. Tr. 48. Moreover, the sentence on which defendant relies is part of a lengthy paragraph in which the ALJ summarized all the evidence showing that AHS's regular education instructors were *not* providing SDI. Tr. 52. That evidence included Ms. Ewing's testimony that she never discussed student's SDI plan with regular education teachers and that the regular education teachers did not track the hours of SDI they provided to student. Read in context, therefore, the ALJ's statement reflects a finding that plaintiffs carried their

---

[5] Defendant argues that the allocation error "permeates" the ALJ's entire decision, Def.'s Opening Br. Supp. Cross-Appeal 11 (doc. 16), but does not provide any examples of alleged errors in burden allocation other than the one addressed here.

burden of proof to show that the regular education teachers were not providing SDI, and defendant failed to provide evidence to rebut that conclusion. There was no error in the allocation of the burden of proof.

Second, defendant argues that the ALJ held it to arbitrary standards with no support in the IDEA with respect to progress reports, whether regular instructors can provide SDI, and what types of transition assessment tools must be used.

With respect to progress reports, the ALJ acknowledged that parents received grade reports at the end of each academic term, but found those reports could not serve as the progress reports guaranteed by the IEP because they were "snapshots at the end of the term" rather than "updates during the term" and included only letter grades, number of absences, and teacher comments, without any discussion of IEP goals, SDI, or student's Behavior Support Plan. Tr. 53. The ALJ erred to the extent she found that the grade reports' frequency and timing rendered them inadequate. The IEP does not specify how often progress reports must be provided. Moreover, grade reports came out in November 2014, January 2015, April 2015, and June 2015 — with sufficient frequency to meet the plain meaning of "regular" updates. District's Ex. D14 at 1-4. But I agree with the ALJ that the grade reports' contents failed to accomplish the goals of progress reports under the IEP, which were to inform parents of student's progress on IEP goals specifically, not of student's academic progress generally.[6]

Regarding whether regular instructors can provide SDI and what types of transition assessment tools must be used, I find no error. The ALJ ordered defendant to provide the

---

[6] Defendants argue that the grade reports were sufficient under the IDEA regulations and that even if they were not, student has failed to show educational harm resulted from any deficiency. Defendants attempt to recast a substantive violation (failure to implement the portion of the IEP requiring regular progress reports) as a procedural violation. For substantive violations, there is no educational harm requirement; the test is materiality.

missing hours of SDI through a licensed special education instructor and to use two transition assessments recommended by Dr. Sherman, plaintiffs' expert. Tr. 64. Defendant is correct that neither the IDEA nor student's IEP mandated the provision of SDI by a licensed special education teacher or the use of particular transition assessments. The ALJ imposed those conditions not because they were required by the IDEA or student's IEP but because she deemed them useful in ensuring student would receive the educational services required to achieve FAPE. Nothing in the IDEA prevents an ALJ from shaping a remedy in this way. *See* 20 U.S.C. § 1415(f)(3)(E)(i) (providing that the decision of the hearing officer "shall be made on substantive grounds based on a determination of whether the child received a [FAPE]"); *id.* § 1415(i)(2)(C)(iii) (giving district courts in IDEA appeals the power to "grant such relief as the court determines is appropriate").

I find no errors in the ALJ's analysis significant enough to undermine the persuasiveness of the decision. Moreover, after a review of the record, I conclude the ALJ's decision is the sort of careful, thorough analysis entitled to significant weight. Defendant contends student received SDI through two sources: interactions with Ms. Ewing, primarily in the form of ad hoc interactions and "teachable moments" collectively totaling thirty to sixty minutes of one-on-one time per week, and assistance from regular education teachers, who helped her with skills such as breaking her assignments into smaller pieces. Tr. 51-52. I agree with the ALJ that at least some of the services provided by Ms. Ewing did not constitute SDI, and even those services that did qualify fell woefully short of the requirements of the IEP. I also agree with the ALJ that the evidence shows no connection between plaintiff's interactions with her regular education instructors and the provision of SDI. Based on Ms. Ewing's testimony, some portion of the thirty to sixty minutes per week that Ms. Ewing spent with student should be counted as SDI.

The difference between the SDI provided (thirty to sixty minutes per week) and the SDI required (approximately eight hours per week, on average) is adequately taken into account by the fact that the ALJ ordered twenty fewer SDI hours in study/organizational skills and behavioral/social skills than were required by the IEP. Taken together with the delay in counseling services and the inadequacy of the progress reports, these implementation failures easily satisfy the materiality standard. There is much more than a "minor discrepancy" between the requirements of the IEP and the services actually provided. *Van Duyn*, 502 F.3d at 822. The ALJ correctly concluded that defendant substantively violated the IDEA in its implementation of student's IEP.

II.    *Procedural Violations*

As noted, the ALJ found four procedural violations of the IDEA. Here, I address only the two violations the ALJ determined resulted in educational harm to student: the failure to provide adequate transition services and the failure to include certain transition goals in the IEP. For each, I first address whether there was a violation, and second consider evidence of educational harm.

A.    *Transition Services*

The IDEA contains special provisions applicable to students who are nearing the date they will graduate from high school. Specifically, beginning no later than the first IEP in effect when the child is sixteen, the IDEA requires school districts to set "appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills" and identify and implement "the transition services (including courses of study) needed to assist the child in reaching those goals." 20 U.S.C. §§ 1414(d)(1)(A)(i)(viii)(aa) & (bb). Transition services prepare students with disabilities for life after high school and should be "result-oriented" with a

PAGE 11 – OPINION AND ORDER

focus on "improving academic and functional achievement of the child with a disability to facilitate the child's movement from school to post-school activities," including post-secondary education and employment. *Id.* § 1401(34)(A).

Student's IEP set transition goals such as learning skills related to a job in the law, acquiring a part-time job in a legal office, and learning to cook, maintain an apartment, and make a budget. The ALJ found those goals, while appropriate and measureable, were not based on age appropriate transition assessments as required by the law. The ALJ also found the transition services inadequate. The IEP stated that student would take two "transitions" classes (finance and career), participate in a career day, and visit a local community college. The ALJ found those recommendations insufficient because the courses were generally available to all students and thus not individualized to meet student's needs. The ALJ also found the services actually provided were inadequate. Student never took the career transitions class and it is unclear whether student visited the community college. Although the career day was an appropriate transition service, the ALJ concluded it was insufficient, standing alone, to fulfill the IDEA's requirements.

Defendant responds that student chose to take figure drawing and classes at the University of Oregon instead of the career transitions class, contrary to the recommendation of the IEP team and AHS teachers. Had student enrolled in the career transitions class, student would have taken transition assessments that would have informed the development of transition goals and services. In sum, defendant places the blame for any transition services deficiency squarely on student.

The ALJ correctly found a violation of the IDEA. Although the IDEA does not mandate any particular transition assessment tool, a student interview, without more, is insufficient. *See*

PAGE 12 – OPINION AND ORDER

*Forest Grove Sch. Dist. v. Student*, 2014 WL 2592654, at \*29 (D. Or. Jun. 9, 2014) (holding that a "brief discussion" with a student is not the sort of "formalized assessment" contemplated by the IDEA). It may be that had defendant taken the career transitions class, the assessments offered in that class would have met the requirements of the IDEA. But student did not take that class, and defendant has not explained why student did not take assessments, whether those used in the transitions class or others, in some other setting. With respect to services, the ALJ erred to the extent she held that transitions classes available to all students cannot form a part of transition services. But I agree that the services here, both as recommended and as implemented, were inadequate. Here, generally available courses were not a *part* of the transition services; for all intents and purposes they *were* the transition services. A school district must do more than enroll a student in generally available courses and send the student to one career day to comply with the IDEA's transition services requirement.

Because this is a procedural violation, student must show educational harm. The ALJ concluded student had done so. *See* Tr. 61 (stating that "parents showed that this procedural violation harmed student" because the assessments led to formulation of inadequate services). In support of this finding, the ALJ cited *Browell v. Lemahieu*, 127 F. Supp. 2d 1117, 1125 (D. Haw. 2000), in which the district gave the student a career test, took the student on two visits to community colleges, connected the student to a vocational counselor, and helped the student learn about applying for driver's license. The ALJ contrasted the individualized assessment and services in *Browell* with the generic services provided in student's case.

Showing educational harm is necessarily difficult to do with respect to transition services, which prepare a student for what will happen in the future. Academic and social success in high school is weak evidence that a student will succeed in the less structured environments of work

and college.  In view of the special difficulty of showing educational harm vis-à-vis a student's readiness to navigate a future transition, I conclude the ALJ reasonably relied on the only evidence available:  the extent to which the transition services were individually tailored to meet student's needs.  Here, there was no such individual tailoring (and no appropriate assessment), and so the educational harm standard is satisfied.

B.    *Omission of Goals from IEP*

Finally, the ALJ found that defendant omitted agreed-upon goals from the IEP.  The missing goals related to taking the SAT and/or ACT, writing a resume, and completing college applications.  Defendant disputes that the IEP team agreed to include those goals.  This is a pure question of fact and I find that the record could support a conclusion in either direction.  Therefore, in view of the ALJ's careful and thorough opinion, I defer to her conclusion that the IEP team agreed to include the goals and find a procedural violation of the IDEA.  Taking into consideration the difficulty noted above regarding proving harm with respect to the ability to navigate a transition, I also conclude there is sufficient evidence of educational harm.  Due to the omission of the goals, student did not, in fact, prepare to take the SAT or ACT, build resume writing skills, or complete college applications.

With respect to both transition services planning and the omitted goals, I conclude the ALJ correctly found a procedural violation of the IDEA and educational harm.

III.    *Remedy: Time Limitation on SDI*

I now turn to plaintiff's single issue on appeal: the time limitation placed on the provision of SDI.  The ALJ ordered defendant to provide the 175 hours of SDI before student graduated

from high school. Plaintiffs argue the time limit was an abuse of discretion because it was
impracticable and rested on an error of law.[7]

Reversal is warranted on the narrow issue of the SDI time limit for two reasons. First, it
appears tying provision of SDI services to student's graduation date may have been based on an
error of law. The SDI outlined in the IEP was to be spread over the course of a school year. The
ALJ did not explain why she was ordering defendant to provide the SDI over the shorter
timeframe of seven months (the time between the final order and student's projected graduation
date at the time of the final order.) It is therefore quite possible the ALJ believed, incorrectly,
that student's eligibility for SDI would expire once she graduated from high school. *See Ruecker
v. Sommer*, 567 F. Supp. 2d 1276, 1292 (D. Or. 2008) ("[C]ompensatory education was an
available administrative remedy and remained a viable option even after [student's]
graduation."). To the extent the ALJ's time limit rested on that error of law, it was an abuse of

---

[7] Plaintiffs also argue that defendant failed to take certain IEP development steps by June
27, 2015, as required in the ALJ's order. Defendant contends this appeal is an improper vehicle
for asserting any argument related to its compliance or noncompliance with the final order,
purporting to limit this Court's review to whether "the ALJ's timeline for compensatory
education was . . . inherently flawed or inappropriate when it was issued by the ALJ." Def.'s
Resp. Br. in Opp'n Of Appeal 5 (doc. 19). On this theory, events that took place after the ALJ's
decision, such as any alleged delay in amending student's IEP, cannot support reversal.
Defendant contends that if plaintiffs were unhappy with the timeline of IEP implementation, they
should have either filed a new due process complaint or filed a motion to compel compliance
with the ALJ's final order.
   The IDEA does not split hairs based on such technicalities. The statute governing IDEA
appeals gives district courts broad discretion to "grant such relief as the court determines is
appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). District courts also have the authority to hear
evidence that was not before the ALJ. 20 U.S.C. § 1415(i)(2)(C)(ii). Moreover, the Ninth
Circuit has reversed an ALJ's final order based on events that happened after the order. *Van
Duyn*, 502 F.3d at 823 (holding that the school district's "corrective action" after the hearing
cured what had been, at the time of the hearing, a material violation of the IDEA).
   Nonetheless, because it is possible to decide the appeal on other grounds and because
neither party requested a hearing to offer evidence to show what steps were taken to develop the
2015-2016 IEP, I confine my review to the appropriateness of the ALJ's time limit at the time of
the hearing.

PAGE 15 – OPINION AND ORDER

discretion. Second, apart from any legal error, there is a serious question about the practicability of providing a year's worth of SDI in seven months, particularly where, as here, the student is already receiving a substantial amount of SDI as a result of a prior IDEA appeal. Together, these factors lead me to conclude the ALJ abused her discretion in requiring the SDI to be provided by student's graduation.

Student is now scheduled to graduate in March 2017. Plaintiffs request an extension of the SDI timeline to March 2018. I find that extension appropriately acknowledges the practical difficulties of providing a large amount of SDI in a short window of time, yet imposes on plaintiffs the burden to use the SDI in the window of time when it will be most useful to student: during the transition from high school to the "real world" of college, employment, and independent living.

## CONCLUSION

The ALJ's decision is REVERSED with respect to the compensatory education time limit only. Student has until March 31, 2018 to access the SDI the ALJ ordered defendant to provide. This appeal is DISMISSED.

IT IS SO ORDERED.

Dated this _16th_ day of March 2017.

Ann Aiken
United States District Judge